NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

SHAHID ALLEN,                       :
                                    :      Civil Action No. 11-219 (CCC)
              Petitioner,           :
                                    :
              v.                    :      **OPINION**
                                    :
GREG BARTKOWSKI, et al.,            :
                                    :
              Respondents.          :

**APPEARANCES:**

> SHAHID ALLEN, <u>Pro</u> <u>Se</u> Petitioner
> # 416421/105078C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625

> LUCILLE M. ROSANO, ESQ.
> ESSEX COUNTY PROSECUTOR'S OFFICE
> Essex County Veterans Courthouse
> 50 West Market Street
> Newark, New Jersey 07102

**CECCHI**, District Judge

Petitioner Shahid Allen ("Petitioner"), a convicted state prisoner presently confined at the New Jersey State Prison in Trenton, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court judgment of conviction entered on or about January 26, 2001. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

I.   BACKGROUND

A.   Procedural History

On September 17, 1999, an Essex County Grand Jury indicted Petitioner on the following charges: (Counts 1) knowing/purposeful murder in violation of N.J.S.A. 2C:11-3a; (Count 2) third degree possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5b; and (Count 3) second degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4a.   (Petitioner's Brief, Docket entry no. 2).

A trial was held before the Honorable Donald S. Goldman, J.S.C. and a jury starting on November 15, 2000 and concluding on December 1, 2000.  The jury convicted Petitioner on all counts of the indictment.  (Id.)

On January 26, 2001, Judge Goldman sentenced Petitioner to an aggregated sentence of sixty years in prison with a 30-year period of parole ineligibility.  (Id.)

Petitioner filed a Notice of Appeal with the Superior Court of New Jersey, Appellate Division.  On November 27, 2002, the Appellate Division affirmed the conviction and sentence. (Respondents' Exhibit 6[1] - November 27, 2002 Appellate Division Opinion).  The Supreme Court of New Jersey denied certification on June 23, 2003.  State v. Allen, 177 N.J. 223 (2003).

---

[1]  Respondents provided the state court record consisting of 28 exhibits.  Hereinafter, Respondents' Exhibits are designated as "RE".

2

Petitioner filed a petition for postconviction relief ("PCR") in state court in October 2003.  An amended petition was filed on March 29, 2004.  For some unexplained difficulties in obtaining the file, the PCR petition was dismissed without prejudice.  The PCR petition was thereafter reinstated alleging claims of ineffective assistance of trial counsel, among other claims.  (RE 13, December 29, 2009 Appellate Division Opinion at pp. 3-4).  Judge Goldman denied the PCR petition by Opinion and Order dated June 30, 2008.  (Petitioner's Brief, Docket entry no. 2).[2]  Petitioner filed an appeal with the Appellate Division.  On December 29, 2009, the Appellate Division affirmed the trial court's denial of the PCR petition.  (RE 13).  The Supreme Court denied the petition for certification on September 15, 2010.  (Petition, ¶11(c)(3)(6).

Petitioner timely filed this habeas petition, pursuant to 28 U.S.C. § 2254, on or about January 3, 2011.  The State responded to the petition, and provided the relevant state court record, on September 21, 2011.  (Docket entry no. 10).  Petitioner filed a reply/traverse on or about November 9, 2011.  (Docket entry no. 22).

---

[2]  Oral argument on the PCR petition was conducted on April 11, 2008.  A copy of the April 11, 2008 PCR Transcript ("PCRT") is attached at RE 28, Docket entry no. 15-4.

B.  Factual Background

    The facts of this case were recounted below and this Court,
affording the state court's factual determinations the
appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply
reproduce the recitation as set forth in the unpublished opinion
of the Appellate Division, decided on November 27, 2002, with
respect to Petitioner's direct appeal:

> Early in the morning of July 2, 1999, Sabir Kendrick, age
> 18, was shot to death in the area of the Felix Fuld Housing
> Project in Newark.  On July 1, 1999, Jeanette Martin, a
> resident of the housing project, heard an argument outside
> her bedroom window sometime between 9 and 10 a.m.  Martin
> testified that the victim was arguing with defendant "about
> some drugs, a drug transaction."  She heard defendant ask
> the victim "where's my money."  She further heard the victim
> state that "he left it at this lady's house" and defendant
> threatened that he would "blow [victim's] brains ... blow
> [victim] away" when he returned.
>
> Later in the evening of July 1, between 11 p.m. and
> midnight, Martin was in her apartment with her boyfriend,
> Michael McKinney, Donna Harris and Dellareese Worthington.
> Martin admitted that she and her companions were drinking
> beer, smoking "some reefer" and listening to music at the
> time.  Worthington heard an argument outside near the
> kitchen window between two men about ten minutes prior to
> the shooting.  Worthington testified that the argument
> concerned "somebody disrespecting somebody's mother and some
> money."  She was unable to identify the participants in the
> argument.
>
> A few minutes after overhearing the argument, Martin and
> Worthington heard six or seven gun shots.  Initially, Martin
> dove under the kitchen table.  Worthington looked out the
> kitchen window; seeing nothing, she proceeded to the living
> room window where she saw defendant shooting a gun.  He was
> ten to fifteen feet from her.  Worthington further described
> the gun as an "automatic" because "the bullets come right
> behind each other."

After the shooting ceased, Worthington left the apartment and saw defendant jump into a brown Maxima. She could not identify the driver of the car. Worthington also discovered that Sabir Kendrick had been shot. He was lying on the ground a few steps from Martin's living room window. Worthington made an in-court identification of defendant as the shooter.

Another resident of the housing project, Dorethesa Kimble was washing her hair when she heard gunshots around 1 a.m. Kimble proceeded to look out her kitchen window and observed:

> Four guys running. Two guys got in the first car; the car drove off. The second car -- the car wouldn't start and one of the guys was standing shooting until the car start[ed]. When the car started, they pulled off.

While Kimble was unable to observe the faces of any of the individuals, she described one of the men as having "dreads and a dark-skinned face." Defendant had long dreadlocks at the time of his arrest.

Newark Police Sergeant William Mehalaris and his partner also heard the gunshots in the direction of the Felix Fuld Projects. Sergeant Mehalaris testified that he heard more than ten gunshots and immediately responded to the scene. At the scene, the officers were informed that someone had been shot. Mehalaris observed the victim lying on the sidewalk with multiple gunshot wounds and called for an ambulance. The officer testified he approached the still conscious victim. In response to the officer's question, the victim replied, "Alpo had shot me."[3] The victim also stated that the shooter had fled in "a small hatchback, either grey or brown car." Mehalaris testified that there were numerous shell casings and bullet fragments in the area. Detective Chirico further testified that the victim said he was shot over money.

Officer Marilyn Cowart and her partner also arrived on the scene. Officer Cowart approached the victim while the other officers assisted with crowd control. After giving his name, age and address, the victim began to panic and asked

---

[3]  Separate charges were pending against "Alpo," also known as Alquon Williams, for the murder of Sabir Kendrick.

her, "Officer, I'm going to die, I'm going to die aren't I?"
Officer Cowart also asked the victim who shot him, to which
he responded "Alpo did it and [] Black was with him."  The
State submitted evidence that defendant was known as Black.
Officer Cowart remembers completing a continuation report
documenting the conversation, but the report could not be
located.  Officer Cowart also testified that she had
specific recollections of that evening and that she only
needed the continuation report to remember "[s]mall details,
but [not] the most important details."

Investigator Fernand Williams, Jr., a member of the Essex
County Crime Scene Unit of the Essex County Prosecutor's
Office, took photographs of the area.  Investigator Williams
was able to identify the first group of six shell casings as
coming from a nine-millimeter weapon.  In a second grouping,
Investigator Williams photographed "a mixture of spent shell
casings, nine millimeters and 45 automatics; also projectile
fragments and blood."  An autopsy performed by Dr. A. Wayne
Williams, a medical examiner with the Regional Medical
Examiner' Office in Newark, found that the victim received
seventeen separate gunshot wounds which caused his death.

Prosecutor's Investigator David Rubin compiled a photo array
containing a picture of defendant and five African-American
males with a similar description.  Martin identified
defendant from the photo array as the person arguing with
the victim that morning, but did not identify defendant in
court because that "boy had long dreadlocks and he was
lighter."  Worthington also identified defendant's picture
as that of the shooter and she identified defendant in court
as the person who shot the victim.

(RE 6, November 27, 2002 Appellate Division Opinion, at pp. 2-5).

## II.  STATEMENT OF CLAIMS

Petitioner asserts the following claims in his petition for

habeas relief:

**GROUND I:**  Petitioner was denied his Sixth Amendment right

to the effective assistance of counsel when trial counsel failed

to conduct a meaningful pretrial investigation prior to trial.

**GROUND II**:  Trial counsel's incompetence resulted in Petitioner's alibi witnesses being precluded from testifying, which resulted in the violation of his Fourteenth Amendment due process right to have witnesses heard.

**GROUND III**: Petitioner was denied his Fourteenth Amendment right to present alibi witnesses at his murder trial who could have proven that he was elsewhere other than the scene of the crime.

The State essentially contends that the petition lacks merit and/or fails to raise a federal constitutional issue.  The State also contends that the petition is time-barred, however, upon review of the procedural history and the relevant record as illustrated above, the Court finds that the petition was timely filed.  Accordingly, the Court will review the petition on the merits.

## III.  STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399

U.S. 912 (1970).  Thus, because Davenport is proceeding as a <u>pro</u> <u>se</u> litigant in this matter, the Court will accord his habeas petition the liberal construction intended for <u>pro</u> <u>se</u> petitioners.

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law.  28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); <u>accord</u> <u>Barry v. Bergen County</u> <u>Probation Dep't</u>, 128 F.3d 152, 159 (3d Cir. 1997).  "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension."  <u>Smith v. Phillips</u>, 455 U.S. 209, 221 (1982).  Generally, "[i]f a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable," <u>Engle v.</u> <u>Isaac</u>, 456 U.S. 107, 120 n. 19 (1982), and "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a ground for relief.  That is, "errors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause."  Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997).  In addition, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim."  Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997)(citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

In addition to the case law, the Antiterrorism and Effective Death Penalty Act ("AEDPA") limits a federal court's authority to grant habeas relief when a state court has adjudicated petitioner's federal claim on the merits.  See 28 U.S.C. § 2254(d).  Where a federal claim was "adjudicated on the merits" in state court proceedings, the writ must be denied unless adjudication of the claim either involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence before the state court.  See 28 U.S.C. § 2254(d).

The unreasonableness standards of § 2254(d) govern only claims that were "adjudicated on the merits in State Court proceedings."  28 U.S.C. § 2254(d).  "An 'adjudication on the

merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004)(citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005); see also Rolan v. Vaughn, 445 F.3d 671, 678 (3d Cir. 2006).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  See Rompilla, 355 F.3d at 247; see also Chadwick v. Janecka, 312 F.3d 597, 605-06 (3d Cir. 2002), cert. denied, 538 U.S. 1000 (2003)(citing Weeks v. Angelone, 528 U.S. 225, 237 (2000)(even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference)).  On the other hand, "[i]f the petitioner's legal claims were presented but not addressed by the state courts, 28 U.S.C. § 2254(d) does not apply." Rolan, 445 F.3d at 678; see also Hameen v. State of Delaware, 212 F.3d 226, 248 (3d Cir. 2000)(with respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment), cert. denied, 532 U.S. 924 (2001); Purnell v. Hendricks, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).

      If the New Jersey courts adjudicated the petitioner's claims on the merits, this Court may not grant relief unless either §

2254(d)(1) or § 2254(d)(2) is satisfied.  See 28 U.S.C. §
2254(d).  Accordingly, this Court may not grant habeas relief to
the petitioner unless the adjudication of a federal claim by the
New Jersey courts involved an unreasonable application of clearly
established Supreme Court law, see 28 U.S.C. § 2254(d)(1), or was
based on an unreasonable determination of the facts in light of
the evidence presented in the State court proceeding and
petitioner is in custody in violation of the Constitution or laws
or treaties of the United States.  See 28 U.S.C. § 2254(a),
(d)(2).

     When the grounds raised in the petition are governed by 28
U.S.C. § 2254(d)(1), the court must begin its analysis by
determining the relevant law clearly established by the Supreme
Court.  See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004).
Clearly established law "refers to the holdings, as opposed to
the dicta, of [the Supreme Court's] decisions as of the time of
the relevant state-court decision."  Williams v. Taylor, 529 U.S.
362, 412 (2000).  A court must look for "the governing legal
principle or principles set forth by the Supreme Court at the
time the state court renders its decision."  Lockyer v. Andrade,
538 U.S. 63, 71, 72 (2003).

     A decision is "contrary to" a Supreme Court holding within
28 U .S.C. § 2254(d)(1), if the state court "contradicts the
governing law set forth in [the Supreme Court's] cases" or if it

"confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." <u>Williams</u>, 529 U.S. at 405-06.  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u> at 413. Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.[4] <u>See</u> <u>id.</u> at 409-10. "The unreasonable application test is an objective one-a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." <u>Thomas v. Varner</u>, 428 F.3d 491, 497 (3d Cir. 2005) (quoting <u>Jacobs v. Horn</u>, 395 F.3d 92, 100 (3d Cir. 2005)).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court." <u>Id.</u>; <u>see</u> <u>also</u> 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state

---

[4]   <u>See</u> <u>also</u> <u>Marshall v. Hendricks</u>, 307 F.3d 36, 71 n. 24 (3d Cir. 2002)("[D]ecisions of federal courts below the level of the United States Supreme Court may be helpful to [a court] in ascertaining the reasonableness of state courts' application of clearly established United States Supreme Court precedent, as well as helpful amplifications of that precedent.")(citations and internal quotation marks omitted).

court factual findings can only be overcome by clear and
convincing evidence.  See Duncan v. Morton, 256 F.3d 189, 196 (3d
Cir. 2001) (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a
habeas petitioner "must clear a high hurdle before a federal
court will set aside any of the state court's factual findings."
Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  ANALYSIS

A.  Ineffective Assistance of Counsel Claims

   Petitioner argues in Grounds One and Two that his trial
counsel was ineffective in violation of his Sixth Amendment
rights.  First, he contends that counsel failed to conduct a
meaningful pretrial investigation before trial and second,
Petitioner argues that his counsel's incompetence resulted in the
preclusion of alibi witnesses at trial.

   The Sixth Amendment, applicable to states through the Due
Process Clause of the Fourteenth Amendment, guarantees the
accused the "right ... to have the Assistance of Counsel for his
defense."  U.S. Const. amend. VI.  The right to counsel is the
right to the effective assistance of counsel, and counsel can
deprive a defendant of the right by failing to render adequate
legal assistance.  See Strickland v. Washington, 466 U.S. 668,
686 (1984).  The "clearly established Federal law, as determined
by the Supreme Court of the United States," 28 U.S.C. §

13

2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland.

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.  See Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness," assessing the facts of the case at the time of counsel's conduct.  See id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  To meet this first prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  Id. at 690.  The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance.  Id.  In analyzing alleged deficient performance, a court "begin[s] with the premise that 'under the circumstances, the challenged action[s] might be considered sound trial strategy,'" Cullen v. Pinholster, ___ U.S. ___, 131 S.Ct. 1388, 1404 (Apr. 4, 2011)(quoting Strickland 466 U.S. at 689).  A court "'must indulge [the] strong presumption' that counsel 'made all significant decisions in the exercise of reasonable professional

14

judgment.'" <u>Cullen</u>, 131 S.Ct. at 1407 (quoting <u>Strickland</u> 466 U.S. at 689-90).

If able to demonstrate deficient performance by counsel, then the petitioner must show prejudice, <u>i.e.</u>, there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694.   As the <u>Strickland</u> Court explained, "[a]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial."   <u>Id.</u> at 693.   Thus, the Court held that prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id</u>. at 694.   The reviewing court must evaluate the effect of any errors in light of the totality of the evidence.   <u>See</u> <u>id.</u> at 695-96.

As the Supreme Court explained,

In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury.   Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways.   Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect.   Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support.   Taking the unaffected findings

15

as a given, and taking due account of the effect of the
errors on the remaining findings, a court making the
prejudice inquiry must ask if the defendant has met the
burden of showing that the decision reached would reasonably
likely have been different absent the errors.

Strickland, 466 U.S. at 695-96.

"The benchmark for judging any claim of ineffectiveness must

be whether counsel's conduct *so undermined* the proper functioning

of the adversarial process that the trial cannot be relied on as

having produced a just result." Cullen, 131 S.Ct. at 1403

(quoting Strickland, 466 U.S. at 686) (emphasis in Cullen).

Thus, habeas review of a state court's adjudication of an

ineffective assistance claim is "doubly deferential." Knowles v.

Mirzayance, 556 U.S. 111, 123 (2009).  To obtain habeas relief, a

state petitioner "must demonstrate that it was necessarily

unreasonable for the [state c]ourt to conclude: (1) that

[petitioner] had not overcome the strong presumption of

competence; and (2) that he failed to undermine confidence in the

[outcome]." Cullen, 131 S.Ct. at 1403.  In other words, the

petitioner must establish both deficient performance and

resulting prejudice in order to state an ineffective assistance

of counsel claim.  See Strickland at 697; see also Jacobs, 395

F.3d at 102; Keller, 251 F.3d at 418.  However, the Supreme Court

further instructed that a district court need not address both

components of an ineffective assistance claim "if the defendant

makes an insufficient showing on one." Strickland, 466 U.S. at

16

697.  "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  Id.

In the instant case, Petitioner presented his ineffective assistance of counsel claims in his petition for post-conviction relief.  The PCR court rejected the claims, in a careful and thorough written opinion, as follows:

> Petitioner's primary complaint on this PCR is his contention that he was deprived of effective assistance of counsel due to various failings of trial counsel.  Specifically, in his pro se argument, Petitioner contends that his trial counsel erred by not calling the supposed alibi witnesses Abdul Jackson and Malik Crenshaw.  The fact is that Abdul Jackson was present the first day of jury selection, interviewed by both the State and defense investigators but never called as a witness.  Petitioner here utterly fails to submit any information to show that Jackson and Crenshaw were ready, willing, and able to provide an alibi at the time of trial. In fact, he is unable to show that even now 8 years later that they are so willing.  He also says that there might have been witnesses or a security camera tape that might have shown him at a skating rink, at an Exxon gas station, or at a White Castle restaurant at a crucial time; however, he has not provided statements of such witnesses nor shown that such a security tape ever existed, much less than it might be exculpatory.  Of course he never identified precisely where he was (skating rink, Exxon station, or White Castle) because he never gave an alibi notice.  As discussed next, this may be because there never was a real alibi for the time of the actual murder.
>
> Even as trial started, it was unclear whether there was a real alibi defense.  According to the interview Abdul Jackson gave to State investigators, the latest time that Jackson saw Petitioner was 12:00 or 12:30 a.m., some 45 to 75 minutes before the shooting.  Malik Crenshaw was never produced and neither defense counsel nor his investigators were ever able to find and interview him.  In fact, counsel was warned that it would be "terribly risky to [refer to an alibi in opening statements] because the State may discover evidence that blows the alibi out of the water before you

17

really have a chance to present it..."  Nevertheless, Petitioner was given the opportunity to instruct his counsel to do so anyway.  Moreover, over objection, Petitioner was allowed to call his mother, who might have shed some light on Petitioner's whereabouts but after permission was granted and after consultation with Petitioner, she was not called.

Moreover, while Petitioner claims that no investigation was done, the fact is that the record is replete with references to a defense investigator.  The record shows that Abdul Jackson was produced.  The record shows that the Petitioner's family was present during substantial parts of the trial if not the entire trial.  Yet there is nothing to corroborate Petitioner's bold statement that "no investigation" was done.

In fact, even to this day, neither Shahid Allen nor his current (or past) PCR counsel have been able to produce either Abdul Jackson or Malik Crenshaw to prove what they might have said at trial nor that what they said would have been helpful.  To this day, Petitioner has never disclosed where he claimed to be if not at the murder scene and who, if anyone, was with him at that time.  His counsel even said, "Your Honor, based upon the time period that the discovery indicates this incident happened, there may not be anybody in particular that I could say Mr. Allen was with." Under the second prong of the <u>Strickland - Cronic - Fritz</u> test, Petitioner has failed to show that if these witnesses had ever been found that "the result of the proceeding would have been different." <u>State v. Preciose</u>, <u>supra</u>, 129 N.J. at 463-64 (quoting <u>Strickland</u>, 466 U.S. 668 (1984)).

Clearly if the so-called alibi witnesses merely placed the Petitioner within striking distance of the murder scene, they would not be alibi witnesses at all.  To the contrary, such witnesses would actually provide inculpatory and not exculpatory evidence.  Defense counsel is a highly skilled litigator who I submit knows the pitfalls of presenting a "bad alibi" to a jury.

. . .

Petitioner's counsel's demonstrated ability at trial more than satisfies the minimum reasonable standard for effective assistance of counsel.  As the Appellate Division has said, Petitioner's trial counsel made ample investigations, made logical strategic decisions, and "... If counsel thoroughly investigates the laws and facts, considering all possible

18

options, his or her trial strategy is virtually unchallengeable." State v. Savage, 120 N.J. 594, 617 (1990).  Moreover, in State v. Baker, 270 N.J. Super. 55, 65 (App.Div. 1994), the court denied the Petitioner's claim of ineffective assistance of counsel where the trial lawyer strategically decided not to introduce potentially exculpatory evidence which would have placed the Petitioner at the scene of the crime.  The Baker court further held that trial counsel's failure to call potential alibi witnesses did not constitute ineffective assistance of counsel because the defendant failed to demonstrate how the testimony would support a finding of innocence.  Id. at 70. The disputed decisions made by counsel at trial were clearly tactical, and in no way inadequate or below a level of reasonable competence.  Accordingly, Petitioner has failed to establish deficiency of trial counsel, the first prong under Strickland.

In addition, the impact of Petitioner's claims of error was not prejudicial, either individually or in the aggregate, to the trial's outcome.  Therefore, even if, arguendo, Petitioner's trial counsel's performance was deficient, he has failed to demonstrate a reasonable likelihood of succeeding on the second prong of the Strickland test.

(RE 9, June 30, 2008 written opinion of Honorable Donald S.

Goldman, J.S.C., at pp. 12-14).

On appeal from denial of the PCR petition, the Appellate

Division affirmed, finding as follows:

We have reviewed the record in its entirety.  We are satisfied that defendant has not marshaled the requisite proofs to satisfy the Strickland/Fritz standard, and we affirm the June 30, 2008 order denying defendant's petition for PCR substantially for the reasons expressed by Judge Goldman in his comprehensive and well-reasoned opinion of the same date.

(RE 13, December 29, 2009 Appellate Division Opinion at pp. 7-8).

This Court has carefully reviewed the petition and the state

court record, and finds that the New Jersey courts' rejection of

Petitioner's ineffective assistance claims was not contrary to,

19

or an unreasonable application of <u>Strickland</u> and its progeny.  As illustrated in Judge Goldman's written opinion denying PCR, Petitioner provided no evidence to show that a true alibi defense existed, nor did the record show that trial counsel was deficient in investigating alibi witnesses.  Indeed, purported witness Jackson placed Petitioner within walking distance of the murder scene a scant forty-five minutes before the shooting had occurred.  Thus, any decision by counsel not to call Jackson as an alibi witness was plainly a strategic or tactical decision. Further, as Judge Goldman pointed out, there was no evidence to show that Petitioner's mother or girlfriend would have provided an alibi for Petitioner, and it was Petitioner's assessment after counsel had interviewed these women, that their testimony at trial was not needed.

Finally, as to the security camera tapes, Petitioner never showed that such security tapes existed, he never claimed that he was at the skating rink at the time of the shooting, and he never disclosed where he was at the time of the shooting or who he actually was with at that time.  Moreover, there is no evidence in the record that the trial court precluded any defense witnesses from testifying.  Rather, it was the trial counsel's strategic decision not to pursue an alibi defense based on the lack of exculpatory evidence.  Consequently, Petitioner has failed to prove either prong of the <u>Strickland</u> test.

In sum, there was simply no demonstration of deficient performance by counsel on these claims that would have had any effect of undermining the verdict.  Petitioner has not shown by any competent evidence that his counsel did not conduct a proper investigation in defense of Petitioner.  Therefore, based on all of the above, this Court concludes that the determination of the state PCR court and appellate court in finding no constitutionally ineffectiveness of counsel, resulted in a decision that was neither contrary to, nor involved an unreasonable application of, clearly established federal law under Strickland, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See Williams, 529 U.S. at 413.  Petitioner has failed to demonstrate that the state court opinions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  Matteo v. Superintendent, 171 F.3d 877, 891 (3d Cir. 1999).  Therefore, the Court will deny federal habeas relief on these ineffective assistance of counsel claims because they are substantively meritless.

B.  Due Process Claim

Finally, in Ground Three of his petition, Petitioner argues that he was denied due process and a fair trial when he was deprived of his right to present alibi witnesses.  For the

reasons stated in Section A above, this Court finds Petitioner's due process claim wholly lacking in merit.  There is no evidence to support an alibi defense, and the state court record clearly shows that Petitioner was never precluded the opportunity to present alibi witnesses.  Accordingly, this claim will be denied.

V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

**CONCLUSION**

For the above reasons, this Court finds that the § 2254 habeas petition must be denied, and a certificate of appealability will not issue.  An appropriate Order follows.

CLAIRE C. CECCHI
United States District Judge

DATED: September 6, 2012

22